By the Court.
 

 This is an original action in this court instituted by the Federal Union Insurance Company, a corporation organized and existing under the laws of the state of Illinois. This company, as relator, seeks a writ of mandamus directing the respondent, Charles T. Warner, as Superintendent of Insurance of this state, to issue and deliver to Elmer L. Jefferson a license authorizing him to act in the capacity of agent for the relator in the state of Ohio for the transaction of such business as the relator is authorized to transact in this state.
 

 It is urged that the refusal of the Superintendent of Insurance to issue such license should be approved and the writ of mandamus sought denied upon the ground that under the facts disclosed Jefferson would be the mere nominal licensee and the license would in fact be controlled by those who were in no wise entitled thereto. It is contended that through the relator it is sought to secure by indirection what could not be directly obtained, and that a further effort is now being made to circumvent the provisions of Section 644
 
 et seq.,
 
 General Code, following the adverse decision of this court in the case of
 
 State, ex rel. Johnson & Higgins
 
 
 *262
 

 Co.,
 
 v.
 
 Safford, Supt. of Ins.,
 
 117 Ohio St., 576, 159 N. E., 829. It was disclosed in that case that the Superintendent of Insurance had refused to issue a license to the Johnson & Higgins Company, an Ohio corporation, authorizing it to act in the capacity of an insurance agent in this state, because of the fact that a majority of its capital stock was owned by a foreign corporation, the holder of a foreign insurance broker’s license. This court in that case sustained the action of the Superintendent of Insurance upon the ground that the relator company was but the
 
 alter ego
 
 of a nonresident insurance broker corporation desiring to write insurance in this state, but under the law not entitled to do so, and hence unable to obtain such resident’s license.
 

 Thereafter a copartnership under the name of Johnson & Higgins was formed, consisting of fourteen persons, said Elmer L. Jefferson being the only party thereto who is a resident of this state. It was formed for the purpose of carrying on business as insurance agents; with its principal office in Cleveland. Jefferson’s proportionate share in said copartnership is therein stated to be five per cent. It was stipulated in such contract that all insurance agency licenses taken in the name of Jefferson shall be “deemed the property of the partnership,” and all earnings of Jefferson as agent, solicitor or broker, ‘ ‘ shall belong to the partnership and be deemed income of the partnership.”
 

 It is thereby disclosed that Jefferson under the terms of this contract is to be but the nominal licensee, and that the license becomes the property of the co-partnership, 95 per cent, of which is owned by the thirteen nonresident partners, one of whom is a licensed foreign broker, who evidently is and has been the moving spirit in the attempt to circumvent the insurance license laws of this state. This foreign broker, a part of the Johnson
 
 &
 
 Higgins insurance system, as disclosed by the record, therefore has a direct interest
 
 *263
 
 in the Ohio agency, not only in its profits, but also in its management and promotion, notwithstanding the restrictive provisions of Section 644-2, General Code, which are as follows: “The licensee shall not solicit insurance directly or indirectly in this state or by or through a representative in this state * * V’
 

 Section 644, General Code, provides that: “No person shall procure, receive, or forward applications for insurance unless a resident of this state and duly licensed by the superintendent of insurance.” One of the conditions upon which such license may be issued is that the Superintendent of Insurance be satisfied that the appointed agent is a suitable person.
 

 If the circumstances shown in the
 
 Safford case, supra,
 
 disclose a purpose “to circumvent the statute of Ohio which prevents such license being secured by other than a resident of the state,” the record in this case discloses the same sort of subterfuge, possibly more subtle, but by the same interests, and in fact by the same parties under a different name, that were involved in the proceedings under consideration in the
 
 Safford case, supra.
 
 Jefferson, though himself a resident of Ohio, and technically within the class which in respect to residence is eligible to secure such license, has, by contract executed in advance of the procurement of an agent’s license, transferred or attempted to transfer that license and make it “the property of the partnership.” Why this persistent endeavor to procure through some indirect and circuitous method an insurance agent license under the control of a Johnson & Higgins corporation? It cannot be accomplished by an Ohio corporation under the control of a corporation licensed as a foreign broker in this state. Subsequent to such announcement by this court the same design and purpose were undertaken through the organization of this partnership under the same name, and apparently under the same management and control. Such is the situation presented by the record,
 
 *264
 
 upon which we are asked to determine that the Superintendent of Insurance is under a duty specially enjoined by law to issue a license to the applicant, Jefferson.
 

 It is apparent from the record that the individuals who constitute the copartnership, at least ten of whom are nonresidents of the state and are connected with the management of the Johnson
 
 &
 
 Higgins insurance system, consisting of several corporations under a similar name, are to participate in the insurance business of this partnership. Though the term soliciting is not used they are to procure and induce persons to come to Jefferson with their business, and under the agreement are to be compensated by receiving a definite proportion of the income from the business secured, which is in effect a stipulated split of the premiums upon such insurance, for that is the only source of income of the copartnership so far as disclosed by the record.
 

 That the relator is fully cognizant of the relationship of Jefferson with the Johnson
 
 &
 
 Higgins Company, and is seeking to promote the purposes of the latter, is also quite apparent from the record. The asserted right to do by indirection that which under the law cannot be directly accomplished was rejected by this court in the
 
 Safford case, supra,
 
 and for similar reasons must be rejected in this case.
 

 It is well settled that the business of insurance is impressed with a public use, and that statutes designed to regulate such business should be liberally construed to effect the purpose to be served and to prevent and correct evils growing out of the conduct of such business. In order to fully effectuate the purpose of such statutory provisions the Superintendent of Insurance has been vested with a measure of discretion in the matter of granting or withholding such license.
 
 Verducci
 
 v.
 
 Casualty Co. of America,
 
 96 Ohio St., 260, 117 N. E., 235;
 
 State, ex rel. European Accident Ins. Co.,
 
 
 *265
 
 v.
 
 Tomlinson, Supt. of Ins.,
 
 101 Ohio St., 459, 129 N. E., 684;
 
 State, ex rel. Natl. Mutl. Ins. Co.,
 
 v.
 
 Conn, Supt. of Ins.,
 
 115 Ohio St., 607, 155 N. E., 138, 50 A. L. R., 473;
 
 People, ex rel. Lieberman,
 
 v.
 
 Van De Carr, Warden, 199
 
 U. S., 552, 50 L. Ed., 305, 26 S. Ct., 144.
 

 It is within the power of the state to prohibit the writing of insurance on property located in the state otherwise than through legally authorized agents, and foreign insurance companies must comply therewith in order to do business in Ohio.
 
 Palmetto Fire Ins. Co.
 
 v.
 
 Conn, Supt. of Ins., 9
 
 F. (2d), 202, affirmed, 272 U. S., 295, 71 L. Ed., 243, 47 S. Ct., 88. Such regulative and restrictive statutes are a valid exercise of the police power, and are not violative of any right secured by either the state or federal constitution.
 
 State, ex rel. Johnson & Higgins Co.,
 
 v.
 
 Safford, supra; La Tourette
 
 v.
 
 McMaster, Ins. Commr.,
 
 248 U. S., 465, 63 L. Ed., 362, 39 S. Ct., 160;
 
 O’Gorman & Young, Inc.,
 
 v.
 
 Hartford Fire Ins. Co.,
 
 282 U. S., 251, 75 L. Ed., 324, 51 S. Ct., 130.
 

 The principle applied in the
 
 Safford case
 
 is also applicable here, and that leads to the conclusion that under the facts disclosed by this record the relator has not a clear right to a writ of mandamus compelling the issuance of the license sought in this action.
 

 Writ denied.
 

 Weygandt, C. J., Stephenson, Jones, Matthias and Bevis, JJ., concur.
 

 Zimmebman and Wilkin, JJ., not participating.