[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 530.]

THE STATE EX REL. HUNTINGTON INSURANCE AGENCY, INC. *v*. DURYEE, SUPERINTENDENT.

[Cite as *State ex rel. Huntington Ins. Agency, Inc. v. Duryee*, 1995-Ohio-337.]

*Mandamus to compel Superintendent of Insurance to act on pending application for licensure as an other-than-life insurance agent—Writ granted, when.*

(No. 94-1970—Submitted June 6, 1995—Decided August 30, 1995.)

IN MANDAMUS.

_____

{¶ 1} In October 1987, then-Superintendent of Insurance, George Fabe, requested an opinion from the Ohio Attorney General concerning, *inter alia*, whether R.C. 3905.01 and 3905.04 prohibited affiliates of noninsurance financial institutions from being licensed as insurance agents. In 1988, the Attorney General issued Opinion No. 88-056, which stated in part that neither R.C. 3905.01 nor 3905.04 prohibits the licensing of a corporate appointee insurance agency merely because it was owned by, or affiliated with, a noninsurance financial institution.

{¶ 2} In December 1988, *amicus curiae*, Independent Insurance Agents of Ohio, Inc. ("Independent"), an association of independent property and casualty insurance agents, filed a complaint against Fabe seeking a declaratory judgment that the principal-purpose test of R.C. 3905.01(B) and 3905.04 prohibits the licensing of applicants affiliated with noninsurance financial institutions. Upon subsequent appeal, this court held that R.C. 3905.01(B) and 3905.04 do not prohibit the licensing of applicants affiliated with noninsurance financial institutions, and an applicant for a license as an other-than-life insurance agent is not precluded from licensure by R.C. 3905.01(B) and 3905.04 merely because an affiliate of the applicant would be precluded thereunder, unless the applicant is the *alter ego* of the precluded affiliate. *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d

310, 587 N.E.2d 814 ("*Fabe*"), paragraphs one and two of the syllabus. The court further stated that "[w]hether a particular applicant for a license is but the *alter ego* of an otherwise precluded entity requires a case-by-case analysis." *Id.* at 315, 587 N.E.2d at 818.

{¶ 3} Relator, Huntington Insurance Agency, Inc. ("Huntington"), is an Ohio corporation organized for the purpose of acting as an insurance agent. Huntington is a subsidiary of Huntington Insurance Agency Services, Inc., a subsidiary corporation wholly owned by the Huntington State Bank, Alexandria, Ohio. The Huntington State Bank is a wholly owned subsidiary of Huntington Bancshares, Inc., a bank holding company.

{¶ 4} On March 19, 1993, Minnesota Mutual Fire & Casualty Company, an insurance company authorized to transact business in Ohio, notified respondent, Superintendent of Insurance Harold T. Duryee, of its appointment of Huntington to act as its agent in Ohio. On April 2, 1993, Huntington submitted an application for licensure as an other-than-life insurance agent with the Ohio Department of Insurance. Huntington certified that it did not seek, and would not hold, an agency license with the principal purpose or intention of soliciting or placing insurance on or in connection with its property for which it acts as agent, custodian, vendor, bailee, trustee, or payee. Huntington's application is complete, and it has responded to all outstanding requests for supplementary information or clarification made by Duryee.

{¶ 5} In June 1993, Independent filed an action for declaratory and injunctive relief in the Franklin County Court of Common Pleas, naming Duryee as defendant. In its complaint, Independent sought a declaratory judgment that any determination by the superintendent of whether an applicant for licensure as an other-than-life insurance agent was the *alter ego* of a precluded affiliate would constitute an unconstitutional exercise of legislative power by the superintendent. Independent also requested that the superintendent be enjoined from taking any

action on Huntington's application, and any other application by affiliates of non-insurance financial institutions, until the General Assembly defines "*alter ego*" or delegates to the superintendent the power to define the term. However, Independent never filed a motion for a temporary restraining order or preliminary injunction.

{¶ 6} Huntington is not a party in the common pleas court case, although it attempted to intervene as a defendant. On July 29, 1993, the common pleas court dismissed Independent's complaint based on this court's decision in *Fabe*, *supra*. The common pleas court also determined that Huntington's motion to intervene was moot because of the dismissal. On appeal, the Court of Appeals for Franklin County reversed the dismissal and remanded the case to the common pleas court based on its holding that the court's decision in *Fabe* did not bar Independent's action for declaratory and injunctive relief. *Indep. Ins. Agents of Ohio, Inc. v. Duryee* (1994), 95 Ohio App.3d 7, 641 N.E.2d 1117. A discretionary appeal to this court was not allowed. 70 Ohio St.3d 1448, 639 N.E.2d 115.

{¶ 7} Duryee has not acted to either grant or deny Huntington's license application. The superintendent has determined to take no action on Huntington's pending application as long as Independent's claim that his *alter ego* determination would be an unconstitutional exercise of legislative power is pending.

{¶ 8} Huntington instituted this action requesting a writ of mandamus ordering Duryee to act on its pending application for licensure. Although the common pleas court originally set Independent's complaint for declaratory and injunctive relief for trial following remand from the court of appeals, the common pleas court stayed the case pending the outcome of this action on joint motion of the superintendent and Independent.

{¶ 9} We issued an alternative writ, and the parties filed stipulated facts and briefs. Independent filed an *amicus* brief urging denial of the requested writ.

---

*Porter, Wright, Morris & Arthur, Anthony J. Celebrezze, Jr., H. Grant Stephenson, Kathleen M. Trafford* and *Michael J. Barren,* for relator.

*Betty D. Montgomery,* Attorney General, *Ava W. Serrano* and *Julia M. Graver*, Assistant Attorneys General, for respondent.

*Emens, Kegler, Brown, Hill & Ritter, William J. Brown* and *Roger P. Sugarman*, urging denial for *amicus curiae*, Independent Insurance Agents of Ohio, Inc.

———————————

**Per Curiam.**

**{¶ 10}** As a preliminary matter, *amicus* Independent contends that the writ must be denied because Huntington failed to comply with R.C. 2731.04. R.C. 2731.04 provides that an action for a writ of mandamus "must be *** in the name of the state on the relation of the person applying ***." This court has previously held that a writ of mandamus may be denied where the action is not brought in the name of the state on the relation of the person requesting the writ. *Gannon v. Gallagher* (1945), 145 Ohio St. 170, 171, 30 O.O. 351, 352, 60 N.E.2d 666; *Maloney v. Court of Common Pleas of Allen Cty.* (1962), 173 Ohio St. 226, 227, 19 O.O.2d 45, 181 N.E.2d 270; *Maloney v. Sacks* (1962), 173 Ohio St. 237, 238, 19 O.O.2d 51, 52, 181 N.E.2d 268, 269. Huntington's complaint for a writ of mandamus does not comport with R.C. 2731.04, since it was not brought in the name of the state on relation of Huntington.

**{¶ 11}** Nevertheless, mandamus actions filed originally in this court "shall proceed under the Ohio Rules of Civil Procedure." S.Ct.Prac.R. X(2); *State ex rel. Shimola v. Cleveland* (1994), 70 Ohio St.3d 110, 112, 637 N.E.2d 325, 326. Civ.R. 17(A) provides:

"*** When a statute of this state so provides, an action for use or benefit of another shall be brought in the name of this state. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a

reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of the real party in interest.  ***"

{¶ 12} In addition, Civ.R. 15(A) allows a party to seek leave of court to amend a pleading beyond the time period when amendments are allowed as a matter of course.

{¶ 13} After Independent claimed in its *amicus* brief that Huntington had not complied with R.C. 2731.04, Huntington filed a motion for leave to amend the caption of the complaint to specify that this action is brought in the name of the state on relation of Huntington.  "'The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies.'" *Patterson v. V & M Auto Body* (1992), 63 Ohio St.3d 573, 577, 589 N.E.2d 1306, 1309, quoting *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 269, 297 N.E.2d 113, 122.  Liberal amendment of pleadings is also favored.  *Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 121-122, 573 N.E.2d 622, 624.  Finally, neither the superintendent nor Independent filed anything in opposition to Huntington's motion for leave to amend.  Therefore, the motion is granted, and the case caption is amended to specify that it is brought in the name of the state on the relation of Huntington.  See *State ex rel. Cosmos Broadcasting Corp. v. Brown* (1984), 14 Ohio App.3d 376, 378-379, 14 OBR 481, 483-484, 471 N.E.2d 874, 879.

{¶ 14} As to the merits of this case, in order to be entitled to a writ of mandamus, Huntington must establish that it possesses a clear legal right to have the superintendent act on its license application, that the superintendent is under a clear legal duty to so act, and that Huntington has no plain and adequate remedy at law.  *State ex rel. Carter v. Wilkinson* (1994), 70 Ohio St.3d 65, 637 N.E.2d 1.

{¶ 15} R.C. 3905.01(B) provides:

"*** Upon written notice by an insurance company authorized to transact business in this state of its appointment of a person to act as its agent, the

superintendent, if he is satisfied *** that in applying for such license it is not the appointee's purpose or intention principally to solicit or place insurance on the appointee's own property or that of relatives, employers, or employees or that for which they or the appointee is agent, custodian, vendor, bailee, trustee, or payee ***.  If such appointee within the preceding two years has not been appointed as a licensed insurance agent ***, the appointee shall be required to submit to a hearing and examination as to the qualifications previously set forth in this section.  *** *Such examination and hearing shall be held and decision rendered by the superintendent within forty-five days from date of application for license.  ***"* (Emphasis added.)

{¶ 16} R.C. 3905.04 provides:

"The superintendent of insurance shall refuse to grant any license applied for, and shall revoke any license of or to any appointee, agent, solicitor, or foreign broker, when the superintendent is satisfied that the principal use of such license has been or is to procure, receive, or forward applications for insurance of any kind, other than life, or to solicit, place, or effect such insurance directly or indirectly upon or in connection with the property of such appointee ***.

"When a written complaint is filed with the superintendent, or the superintendent otherwise has reasonable cause to believe that any such appointee, agent, foreign broker, or solicitor has been, is, or will be using any license directly or indirectly for any of the purposes set forth in the first paragraph of this section, *the superintendent shall investigate such complaint forthwith.  ***

"Unless the complaint has been dismissed, *the superintendent, immediately upon completion of such investigation, shall fix a time and place at which such complaint will be heard and shall give notice thereof ***.  The date set forth for such hearing shall be within thirty days *** of such notice.*"  (Emphasis added.)

{¶ 17} As the superintendent concedes, he has a duty under R.C. 3905.01(B) and 3905.04 to determine applications for licensure.  Further, under

these statutes, Duryee had a duty to render a decision on Huntington's application promptly. Over two years have passed since Huntington's application for a license as an other-than-life insurance agent was submitted. The superintendent has refused to act on Huntington's application.

{¶ 18} While a writ of mandamus cannot issue to control an officer's exercise of discretion, it can be issued to compel him to exercise it when he has a clear legal duty to do so. *State ex rel. Hodges v. Taft* (1992), 64 Ohio St.3d 1, 4, 591 N.E.2d 1186, 1189. Further, where officers responsible for granting or denying a license or permit have failed to respond to an application, mandamus is available to an applicant to compel the officer to pass upon the application. See, generally, 1 Antieau, The Practice of Extraordinary Remedies (1987) 322, Section 2.24; *State ex rel. Benton's Village Sanitation Serv. v. Usher* (1973), 34 Ohio St.2d 59, 61, 63 O.O.2d 90, 92, 295 N.E.2d 657, 658 ("[F]or 'refusal to act' appellant would be entitled to a writ of mandamus compelling the appellee to consider appellant's application for a license and to either grant the license or enter upon their records an order denying the license.").

{¶ 19} The superintendent asserts that his refusal to act on Huntington's application is justified by Independent's pending common pleas court action, since the common pleas court might declare that the superintendent's *alter-ego* determination mandated by this court's holding in *Fabe* would be unconstitutional. Independent contends that since the General Assembly has not specified standards regarding the *alter-ego* issue as it relates to licensure under R.C. 3901.01(B) and 3905.04, the holding by this court in *Fabe* unconstitutionally delegated legislative authority to the superintendent to make *alter-ego* determinations.

{¶ 20} The legislative power of the state is vested in the General Assembly by Section 1, Article II of the Ohio Constitution, and it may not transfer these vested legislative functions unless it has provided sufficient standards within which a board or administrative agency may make subordinate rules. *Belden v. Union Cent.*

7

*Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E.2d 629, paragraphs one and three of the syllabus; *Princeton City School Dist. Bd. of Edn. v. Ohio State Bd. of Edn.* (1994), 96 Ohio App.3d 558, 645 N.E.2d 773.

{¶ 21} Statutes are presumed to be constitutional unless shown beyond a reasonable doubt to violate a constitutional provision. *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 352, 639 N.E.2d 31, 33. Neither Independent nor the superintendent cites pertinent authority for the proposition that this court's holding in *Fabe*, requiring the superintendent to conduct case-by-case determinations regarding whether an applicant for other-than-life insurance agency affiliated with a noninsurance financial institution is the *alter ego* of the precluded affiliate, compels the unconstitutional result of delegating legislative authority to the superintendent. Instead, the court merely construed the applicable law, and followed the general legal guidelines for an *alter-ego* determination. The court did not engage in judicial legislation.

{¶ 22} The Superintendent of Insurance has possessed authority to determine if an applicant is the mere *alter ego* of a precluded entity for many years, and *Fabe* did not modify the superintendent's authority in this regard. *State ex rel. Johnson & Higgins Co. v. Safford* (1927), 117 Ohio St.576, 159 N.E. 829; *State ex rel. Fed. Union Ins. Co. v. Warner* (1934), 128 Ohio St.261, 190 N.E. 575; *Associated Adjusters of Ohio v. Dept. of Ins.* (1977), 50 Ohio St.2d 144, 4 O.O.3d 341, 363 N.E.2d 730. As noted by Huntington, there is no constitutional prohibition on an administrative officer like the superintendent against following the controlling case law even if the General Assembly has not yet incorporated that case law by statute. The criteria for the *alter-ego* determination have been expressed with sufficient specificity by precedent. See, *e.g.*, *Fabe, supra*, 63 Ohio St.3d at 315, 587 N.E.2d at 817-818, citing *Safford*; cf. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 289, 617 N.E.2d 1075, 1086. Further, the superintendent may not now enact administrative

rules imposing additional requirements on license applicants that are contrary to the statutes as construed by this court in *Fabe*. See *Hoover Universal, Inc. v. Limbach* (1991), 61 Ohio St.3d 563, 569, 575 N.E.2d 811, 816.

{¶ 23} In addition, even assuming, *arguendo*, the validity of Independent's claim that the superintendent could not constitutionally render an *alter-ego* determination, the superintendent would still have had a clear legal duty to act on Huntington's application. When any provision of the Revised Code or its application to any person is held unconstitutional, that portion is severed, and the remaining provisions or applications of the Revised Code which can be effective without reference to the unconstitutional portion remain operable. R.C. 1.50; *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 523-524, 644 N.E.2d 369, 377. The *alter-ego* determination is merely an exception to the general rule that R.C. 3905.01(B) and 3905.04 do not prohibit the licensing of applicants affiliated with noninsurance financial institutions. *Fabe*, *supra*, at paragraphs one and two of the syllabus. Therefore, if the superintendent could not constitutionally render an *alter-ego* determination, that portion of the application of R.C. 3905.01(B) and 3905.04 would be severed, and he would consider the license application based on the remaining provisions, which do not preclude the licensing of applicants affiliated with noninsurance financial institutions. Accordingly, even if Independent's action for declaratory relief were successful, the superintendent would still have the duty to rule on Huntington's application.

{¶ 24} Consequently, Huntington has a clear legal right to a determination by the superintendent on its application, and the superintendent has a corresponding legal duty to render the determination.

{¶ 25} The superintendent and Independent next claim that the writ should be denied because there is an adequate remedy at law. A writ of mandamus will not be issued when there is a plain and adequate remedy in the ordinary course of law. R.C. 2731.05. In order for an alternative remedy to constitute an adequate

remedy at law, it must be complete, beneficial, and speedy. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 592, 639 N.E.2d 1189, 1194.

{¶ 26} Until there is a determination by the superintendent on Huntington's license application, there is no right of appeal. See, *e.g.*, R.C. 3905.04. The superintendent and Independent contend that the pending declaratory judgment action provides an adequate alternative remedy at law. In general, where declaratory judgment would not be a complete remedy unless coupled with ancillary relief in the nature of a mandatory injunction, the availability of declaratory judgment is not an appropriate basis to deny a writ to which the relator is otherwise entitled. *State ex rel. Fenske v. McGovern* (1984), 11 Ohio St.3d 129, 11 OBR 426, 464 N.E.2d 525, paragraph two of the syllabus; *State ex rel. Kmart v. Westlake Planning Comm.* (1994), 68 Ohio St.3d 151, 158, 624 N.E.2d 714, 720; *State ex rel. Ryan v. State Teachers Retirement Sys.* (1994), 71 Ohio St.3d 362, 364, 643 N.E.2d 1122, 1125; see, generally, Antieau, The Practice of Extraordinary Remedies, *supra*, at 300, Section 2.06 ("A declaratory action, which merely announces the existence of a duty to be performed, has generally not been deemed as adequate as the writ of mandamus, which compels performance."). Since a mandatory injunction is an extraordinary remedy, it does not constitute an adequate remedy in the "ordinary" course of the law. *State ex rel. Zupancic v. Limbach* (1991), 58 Ohio St.3d 130, 133, 568 N.E.2d 1206, 1209; *Fenske*, *supra*, at paragraph one of the syllabus; *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631, paragraph six of the syllabus.

{¶ 27} However, where a declaratory judgment action is not merely available but is actually pending, the court has sometimes held that the pending action constitutes an adequate remedy at law. See, *e.g.*, *State ex rel. First Natl. Bank v. Botkins* (1943), 141 Ohio St. 437, 25 O.O. 576, 48 N.E.2d 865, paragraph two of the syllabus ("Where prior actions, to which relator could be made a party and which involve the same subject matter as the instant action, are pending in

another court having jurisdiction to grant full and adequate relief to all parties, a writ of mandamus will not be granted during the pendency of such prior actions.").

{¶ 28} In other words, "[w]here parties to a mandamus action are also parties, or may be joined as parties, in a previously filed declaratory judgment action involving the same subject matter, a court, in the exercise of its discretion, may refuse to issue a writ of mandamus." *State ex rel. Bennett v. Lime* (1978), 55 Ohio St.2d 62, 9 O.O.3d 69, 378 N.E.2d 152, syllabus; see, also, *State ex rel. Zellner v. Bd. of Edn. of Cincinnati* (1973), 34 Ohio St.2d 199, 63 O.O.2d 310, 297 N.E.2d 528; *State ex rel. Ney v. Governor* (1991), 58 Ohio St.3d 602, 587 N.E.2d 986.

{¶ 29} In the case at bar, Huntington could intervene in the declaratory judgment action and seek a mandatory injunction compelling the superintendent to act on its application. This would arguably provide complete relief to Huntington.

{¶ 30} Nevertheless, as noted previously, Independent's declaratory judgment action directly attacks the decision of this court in *Fabe* as requiring the superintendent to perform an unconstitutional determination whenever he has an applicant that is an affiliate of an otherwise precluded entity. This court, rather than the common pleas court, seems to be better equipped to rule on the constitutionality of the application of its own opinion. Unlike *Ney*, there is no need for further development of the record. In addition, unlike *Zellner*, the pending action will not provide a more complete disposition of the issues. Further, as detailed previously, even assuming the validity of Independent's constitutional claim, the superintendent would still possess a clear legal duty to act on Huntington's application. The pending action has been stayed during this extraordinary action. Finally, over two years have passed since Huntington submitted its application.

{¶ 31} Based on the foregoing circumstances, the pending declaratory judgment action does not constitute an adequate remedy at law. Accordingly, a

writ of mandamus is granted compelling the superintendent to act on Huntington's pending application for licensure as an other-than-life insurance agent.

*Writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., CONCUR.

PFEIFER, J., dissents.

WRIGHT, J., not participating.

_____