On April 17, 1998, Del D. Church, an inmate at North Central Correctional Institution ("NCCI"), filed a complaint in the Franklin County Court of Common Pleas for a writ of mandamus against the Ohio Department of Rehabilitation and Correction ("ODRC"), care of Assistant Chief Inspector John K. Arbogast (hereinafter "respondent"). Mr. Church (hereinafter "relator"), who proceeded pro se, averred Mr. Arbogast had failed to comply with certain regulations governing grievance procedures set forth in the Ohio Administrative Code.
On May 11, 1998, respondent filed an answer and a motion for summary judgment. In its motion for summary judgment, respondent contended relator's complaint should be dismissed for failure to comply with R.C. 2731.04, R.C. 2969.22 and R.C.2969.25 and on the grounds relator had not met the requirements for a writ of mandamus.
On May 22, 1998, relator submitted his "opposition" to respondent's answer, a memorandum contra respondent's motion for summary judgment, and a motion to amend his complaint pursuant to Civ.R. 15.
On August 3, 1998, the trial court rendered a decision, finding summary judgment in favor of respondent (hereinafter "appellee") was warranted. A judgment entry was journalized on September 16, 1998. Relator (hereinafter "appellant") has appealed to this court, assigning the following errors (termed "issues") for our consideration:
 1) Whether the Court of Common Pleas, in Granting Summary Judgment was improperly decided of the factual issues of the Writ of Mandamus. * * *
 2) Whether the Court of Common Pleas has abused its discretion by acting inconsistent with the spirit of the Civil Rules of Procedure. * * *
We note initially that this appeal stems from the granting of summary judgment in favor of appellee. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370, citing Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, paragraph three of the syllabus. The moving party has the initial burden of demonstrating there is no genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280,292. Our review of the appropriateness of summary judgment is de novo. See Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35.
We address appellant's second assignment of error first. Appellant's sole argument under this assignment of error is that the trial court erred in not allowing him to amend his complaint and in finding appellant failed to properly bring this action in the name of the state as required by R.C.2731.04. Appellee asserts the trial court correctly granted it summary judgment, in part, on the basis appellant failed to comply with R.C. 2731.04.
R.C. 2731.04 states, in part:
 Application for the writ of mandamus must be by petition, in the name of the state on the relation of the person applying * * *. (Emphasis added.)
The Supreme Court of Ohio has held that a writ of mandamus may be denied when the action is not brought in the name of the state on the relation of the person requesting the writ. SeeState ex rel. Huntington Ins. Agency, Inc. v. Duryee (1995),73 Ohio St.3d 530, 532. Here, appellant's petition (i.e.
complaint) was not in the name of the state on the relation of appellant. However, appellant filed a motion for leave to amend his complaint, in part, to comply with R.C. 2731.04. The trial court did not explicitly rule on this motion and, therefore, effectively denied it. Appellant's failure to comply with R.C.2731.04 was one basis for the trial court's granting of summary judgment.
We find the trial court erred in failing to grant appellant leave to amend his complaint in order to comply with R.C.2731.04. As stated in Duryee at 533, the spirit of the Civil Rules is resolution of cases upon their merits, not upon pleading deficiencies, and liberal amendment of pleadings is favored. Indeed, Civ.R. 15(A) states that such leave is to be freely given when justice so requires.
Given the above, we find the trial court erred in effectively denying appellant's motion for leave to amend his complaint in order to comply with R.C. 2731.04. Therefore, to the extent summary judgment in favor of appellee was based upon appellant's failure to comply with R.C. 2731.04, the trial court's judgment was erroneous.
Accordingly, appellant's second assignment of error is sustained.
Appellant's first assignment of error addresses the remaining bases appellee set forth in support of its motion for summary judgment. First, appellee contends summary judgment in its favor is appropriate because appellant failed to comply with certain requirements set forth in R.C. 2969.22 and 2969.25.
Appellee contends appellant was required to pay the fees described in R.C. 2969.22. R.C. 2969.22 states, in pertinent part:
 (A)(1) Whenever an inmate commences a civil action or appeal against a government entity or employee on or after October 17, 1996, all of the following apply:
 (a) The clerk of the court in which the civil action or appeal is filed shall notify the inmate and * * * the department of rehabilitation and correction * * * of the deductions and procedures required by divisions (A) to (D) of this section, and shall identify in the notice the civil action or appeal by case name, case number, name of each party, and the court in which the civil action or appeal was brought.
 (b) The clerk of the court in which the civil action or appeal is filed shall charge to the inmate either the total payment of the requisite fees that are described in section 2303.20 of the Revised Code or that otherwise are applicable to actions or appeals filed in that court or, if the inmate has submitted an affidavit of indigency, all funds in the inmate account of that inmate in excess of ten dollars, and shall notify the inmate of the charge.
 (c) Unless the amount charged under division (A)(1)(b) of this section constitutes the total amount of the requisite fees, all income in the inmate account of the inmate shall be forwarded to the clerk of the court during each calendar month following the month in which the inmate filed the civil action or appeal until the total payment of the requisite fees occurs. The first ten dollars in the inmate account of the inmate each month shall be excluded from that forwarding requirement. If multiple charges are assessed to an inmate account under this division, charges shall be calculated on the basis of the inmate's total income and shall be paid as described in this division until the charges exceed one hundred per cent of nonexcluded funds in the inmate account; thereafter, all unpaid fees shall be paid simultaneously from the inmate account of the inmate to the appropriate court or courts pro rata.
 (d) Upon receipt of the notice of the requisite fees payable pursuant to divisions (A)(1)(a) to (c) of this section, the department * * * shall deduct from the inmate account of the inmate and transmit to the clerk of the appropriate court the appropriate amounts of the requisite fees as described in divisions (A)(1)(b) and (c) of this section. (Emphasis added.)
Here, the record shows that the clerk of courts sent the notices required under R.C. 2969.22(A)(1)(a), including a notice to appellee, with an attached bill cost, that all income in the inmate account must be forwarded to the clerk of court. There is nothing further in the record related to the procedures and requirements set forth in R.C. 2969.22(A).
Summary judgment against appellant on the basis he failed to comply with R.C. 2969.22 is inappropriate because there is no evidence appellant is not in compliance. R.C. 2969.22(A)(1)(d) states the department shall deduct the appropriate amounts from appellant's inmate account and transmit such to the clerk of courts. Without any further evidence of what has or has not occurred in this regard, summary judgment against appellant for an alleged failure to pay in accordance with R.C. 2969.22(A) is inappropriate.
Appellee also asserts summary judgment in its favor is appropriate because appellant failed to comply with R.C.2969.25. R.C. 2969.25 states, in pertinent part:
 (A) At the time that an inmate commences a civil action or appeal against a government entity or employee, the inmate shall file with the court an affidavit that contains a description of each civil action or appeal of a civil action that the inmate has filed in the previous five years in any state or federal court. The affidavit shall include all of the following for each of those civil actions or appeals:
 (1) A brief description of the nature of the civil action or appeal;
 (2) The case name, case number, and the court in which the civil action or appeal was brought;
 (3) The name of each party to the civil action or appeal;
 (4) The outcome of the civil action or appeal, including whether the court dismissed the civil action or appeal as frivolous or malicious under state or federal law or rule of court, whether the court made an award against the inmate or the inmate's counsel of record for frivolous conduct under section 2323.51 of the Revised Code, another statute, or a rule of court, and, if the court so dismissed the action or appeal or made an award of that nature, the date of the final order affirming the dismissal or award.
* * *
 (C) If an inmate who files a civil action or appeal against a government entity or employee seeks a waiver of the prepayment of the full filing fees assessed by the court in which the action or appeal is filed, the inmate shall file with the complaint or notice of appeal an affidavit that the inmate is seeking a wavier of the prepayment of the court's full filing fees and an affidavit of indigency. The affidavit of waiver and the affidavit of indigency shall contain all of the following:
 (1) A statement that sets forth the balance in the inmate account of the inmate for each of the preceding six months, as certified by the institutional cashier;
 (2) A statement that sets forth all other cash and things of value owned by the inmate at that time.
Appellant did not file an affidavit pursuant to R.C.2969.25(A). As to R.C. 2969.25(C), appellant did file an affidavit of indigency with his complaint. This affidavit stated appellant was incarcerated at NCCI, and appellant possessed nothing of value nor did he have any source of income in which to pay the court costs. It is unclear whether this affidavit was filed pursuant to R.C. 2969.25(C) or just as a general matter.
The Supreme Court of Ohio has upheld dismissals of original actions for failure to comply with the requirements set forth in R.C. 2969.25. See State ex rel. Zanders v. Ohio Parole Bd.
(1998), 82 Ohio St.3d 421, 422, citing State ex rel. Alford v.Winters (1997), 80 Ohio St.3d 285, 286. However, for the reasons that follow, we find summary judgment in favor of appellee on the basis appellant failed to comply with R.C.2969.25 is inappropriate.
R.C. 2969.25(A) states that at the time an inmate commences a civil action, he or she shall file an affidavit containing a description of each civil action or appeal filed by such inmate in the previous five years. In the case at bar, however, it is unclear whether or not appellant had any previous cases subject to the disclosure requirement in R.C. 2969.25(A). R.C.2969.25(A) does not state that an affidavit indicating no such actions have been filed is required. This reasoning has been adopted in two recent cases out of the Seventh District Court of Appeals. Shivers v. Tate (Jan. 26, 1999), Belmont App. No. 98BA42, unreported, at 5-6 (petitioner is not required to file an affidavit under R.C. 2969.25(A) where there were no prior civil actions within the previous five years); Rushing v.Haskins (Jan. 26, 1999), Noble App. No. 255, unreported, at 4-5.
We agree in principle with the Seventh District. If there are no actions subject to the disclosure requirement in R.C.2969.25(A), then no affidavit need be filed. However, a written statement affirming that no prior actions subject to disclosure exist should in fact be filed. In the context of summary judgment, therefore, summary judgment in favor of appellee on the ground appellant failed to file an affidavit pursuant to R.C. 2969.25(A) was inappropriate.
In addition, and as to both R.C. 2969.25(A) and (C), appellant filed a motion to amend his complaint, in part, to comply with R.C. 2969.25(A) and (C). As discussed above, the trial court did not specifically rule on this motion. While the Supreme Court has held that compliance with R.C. 2969.25(A) and (C) is mandatory, see Alford and Zanders, supra, it has not addressed the issue of whether an inmate should be permitted to amend the complaint to comply with the provision.
Both R.C. 2969.25(A) and (C) require affidavits at the time of the commencement of the action/filing of the complaint. However, we do not believe that such provisions prelude a court from granting a motion to amend or for leave in order to file the requisite affidavits. In Akbar-El v. Ohio Dept. of Rehab.and Corr. (Mar. 19, 1998), Franklin App. No. 97APE09-1180, unreported (1998 Opinions 621), this court affirmed the trial court's granting of summary judgment against an inmate who failed to file an affidavit pursuant to R.C. 2969.25(A). We noted, however, that the inmate had been given ample opportunity to file the affidavit in order to oppose the defendants' motion for summary judgment, but the inmate failed to do so. Id. at 626-627. Such reasoning supports our conclusion that inmates may be given leave, after the filing of the complaint, to file the affidavits required under R.C.2969.25.
We note that the trial court did not address these issues specifically, and it was not necessary since it granted appellee summary judgment on other grounds. However, the trial court impliedly denied appellant's motion to amend, and we find this to be erroneous. Again, our review of summary judgment isde novo, and we conclude summary judgment in favor of appellee on the grounds appellant failed to comply with R.C. 2969.25 is inappropriate in light of the fact that appellant should have been given leave, upon his motion to amend his complaint, to file any affidavits required under R.C. 2969.25.
We now address whether or not summary judgment in favor of appellee is appropriate on the merits of appellant's complaint for a writ of mandamus. In order to be entitled to a writ of mandamus, the relator must demonstrate: (1) a clear legal right to the requested relief; (2) a clear legal duty on the part of the respondent; and (3) the lack of an adequate remedy in the ordinary course of the law. State ex rel. Zimmerman v. Tompkins
(1996), 75 Ohio St.3d 447, 448.
Appellant seeks a writ ordering the chief inspector to consider a grievance filed by appellant. Appellee asserts, essentially, that a writ of mandamus is inappropriate because appellant failed to follow the grievance procedure.
The grievance procedure and the duties of the chief inspector are set forth in Chapter 5120-9 of the Ohio Administrative Code.
Ohio Adm. Code 5120-9-30 provides:
(D) The chief inspector shall:
 (1) Serve as chief administrator of the grievance procedure for inmates;
* * *
 (15) Perform other duties related to grievance procedures and investigations as appropriate and/or assigned by the director or the assistant director.
* * *
 (F) The chief inspector, with the support of sufficient staff, shall administer the departmental grievance procedure for inmates. He shall have a centrally located staff, as necessary, with the following duties:
 (1) Assistant chief inspectors. These individuals will assist the chief inspector in deciding grievance appeals, will provide continuous monitoring and auditing of the grievance procedure for inmates, and will be responsible for the compilation and publication of all data.
* * *
 (G) The office of chief inspector shall not accept jurisdiction of a grievance appeal until all administrative remedies have been exhausted at the local institution level. * * * (Emphasis added.)
In addition to the chief inspector, each institution has a local inspector of institutional services. Ohio Adm. Code5120-9-30(J). Ohio Adm. Code 5120-9-30(K) provides:
 (K) Duties of the inspector of institutional services.
 (1) The inspector of institutional services shall be primarily responsible for:
* * *
 (b) The investigation and processing of grievances made by inmates;
* * *
 (3) The inspector of institutional services shall provide the inmate grievant with a written statement of the determination of his grievance and the reason for that determination.
Ohio Adm. Code 5120-9-31 sets forth the grievance procedure and states, in pertinent part:
 (A) The grievance procedure outlined herein is designed to give inmates in Ohio correctional institutions a method for presenting complaints and problems relating to the conditions of their incarceration. It is intended to be the mechanism to which inmates may turn after they have attempted to resolve the problem or complaint with the staff member(s) most directly responsible for the aspect of institutional life in question.
* * *
 (F) An inmate should first attempt to resolve his grievance by contacting in person or in writing the appropriate institutional department or staff member whose area or responsibility is related to the grievance. If the grievance is not resolved to the satisfaction of the inmate, he may, in writing or in person, notify the inspector of institutional services of his grievance.
* * *
 (H) The grievance resolution procedure shall be as follows:
 (1) Upon notification by an inmate, in writing or in person, of a grievance, the inspector of institutional services shall take such actions as are necessary to resolve the grievance and make a brief written description of the grievance and the resolution thereof in a log kept for that purpose. The log shall be maintained for inspection by the managing officer and the chief inspector.
 (2) Either the inmate or the inspector may require that the grievance be stated in detail on a form provided for that purpose. Upon request, the inspector of institutional services will assist in the completion of that form. A copy of the completed form is to be given to the inmate, and the original retained by the inspector of institutional services.
* * *
 (4) The inspector of institutional services shall conduct all interviews, records research, or other investigation necessary to effect a proper resolution of the grievance. He shall maintain a written record of his investigations as well as his conclusions and recommendations or actions concerning the grievance.
 (5) Should the grievance not be resolved by the inspector of institutional services within ten working days, he shall notify the inmate in writing of the reasons for the extension of time with a copy to the chief inspector. If the grievance is not resolved within fifteen working days, the inmate shall be entitled to file his grievance directly with the chief inspector unless the inmate has agreed in writing to an extension of the time for a response. Any extension of time beyond thirty days must be approved by the chief inspector.
 (6) If the resolution of the grievance is not within the scope of authority of the inspector of institutional services, he shall submit his findings and recommendations concerning the disposition of the grievance to the managing officer for his endorsement, modification, or disapproval. Within ten working days, the managing officer shall respond to the inspector of institutional services.
 (7) In all cases the inspector of institutional services will provide the inmate with written notice of the resolution of his grievance and the reasons for that resolution.
 (8) Whenever the inmate is dissatisfied with the resolution of his grievance, he may, within five working days of receipt of written notice of the resolution of his grievance, appeal in writing to the chief inspector upon a form provided for that purpose. The chief inspector shall notify the inmate in writing within twenty working days of his decision on appeal. If the chief inspector requires additional time, he shall so notify the inmate in writing of the reasons for the extension with a copy to the director. The processing of a grievance from initiation to final disposition shall not exceed ninety days, unless the grievant agrees in writing to an extension for a fixed period.
The facts in the case at bar are as follows. At the time of the incidents that formed the bases for appellant's grievance, appellant was confined at the London Correctional Institution ("LCI"). On June 20, 1997, appellant filled out an informal complaint resolution form and submitted it to a "Ms. Green." Appellant alleged "violation of confidential records," denial of medical treatment and care and violation of the eighth amendment.
Some time between June 20, 1997 and November 20, 1997, appellant was transferred from LCI to NCCI. On November 20, 1997, appellant submitted a notification of grievance to Larry Yoder, the inspector of institutional services at NCCI. Such grievance concerned essentially the same allegations as in the informal complaint resolution. Along with the notification of grievance, appellant sent Mr. Yoder a kite stating appellant had sent a notification of grievance form to LCI but had received no response in two months. Appellant requested "an appeal" to the chief inspector so that appellant could exhaust his administrative remedies.
On November 28, 1997, Mr. Yoder submitted a disposition of grievance. Mr. Yoder stated that he was unable to investigate appellant's complaint because the alleged violations occurred at LCI, and such investigation must be done by the inspector of institutional services at LCI. Mr. Yoder further stated that pursuant to appellant's request in the kite, Mr. Yoder was sending appellant an appeal form to be completed and sent to the chief inspector. At the bottom of the disposition of grievance form is a pre-printed statement that an appeal to the chief inspector may be taken within five working days of receipt of the disposition.
On December 8, 1997, appellant appealed to the chief inspector. In a January 5, 1998 letter to appellant, assistant chief inspector John K. Arbogast informed appellant he required additional time to make a decision on the grievance. On January 29, 1998, the chief inspector's decision was made, affirming Mr. Yoder's decision. Mr. Arbogast advised appellant to submit a grievance to the inspector of institutional services at LCI so that he may adequately investigate and appropriately respond to appellant's complaint. Mr. Arbogast further indicated that if appellant did not agree with LCI's decision, appellant could appeal to the chief inspector.
In his complaint, appellant avers that he filed a notarized grievance with LCI on February 12, 1998. Appellant contends he has received no response from LCI. Appellant also averred that he filed a notarized grievance with the chief inspector on March 14, 1998, but never got a response.
Attached to appellant's complaint is a notification of grievance form dated February 12, 1998. The document is notarized and signed by appellant with a statement that it was sent by regular U.S. mail on February 12, 1998. Also attached to the complaint is a letter dated March 14, 1998 from appellant to Mr. Arbogast. A copy of this same letter is attached to appellant's memorandum contra the motion for summary judgment, and this copy of the letter bears a time stamp from the chief inspector's office indicating the letter was received on March 18, 1998. Such letter stated, in pertinent part:
 I'm sending you this Grievance concerning the Grievance filed on February 12, 1997 with the London Correctional Institution Inspector, and the copy filed with your office, to affirm that I have complied with your response concerning Grievance # 11-97-20. Being it's been over 30 days and the London Correctional Institutional Inspector, "Was to resolve the Grievance with 10 working days or notify the Inmate in writing [w]ith the reasons for the extension of time and a copy to the Chief Inspector. If the Grievance is not resolved within 15 workings days, the Inmate is entitled to file the Grievance directly with the Chief Inspector unless the Inmate has agreed to an extension of time in writing." OAC 5120-9-31 (H) (5).
In an affidavit, Mr. Arbogast stated that he received only a letter and not a grievance on the appropriate form. However, appellant submitted an affidavit with his memorandum contra indicating the attached exhibits were true and accurate. Exhibit 3 to the memorandum contra is not only the March 14, 1998 letter, but also includes a copy of the February 12, 1998 grievance that was allegedly mailed to the chief inspector with the March 14, 1998 letter.
The issue presented to us is whether the above raises a genuine issue of fact as to whether appellant properly followed the grievance procedure such that he is entitled to have the chief inspector respond to his grievance. In essence, both parties correctly followed the grievance procedure up until the chief inspector's January 29, 1998 decision. While it true that appellant should have sent the November 20, 1997 grievance to LCI and not NCCI, such is not fatal to appellant's argument at this time. The parties continued the procedure and this resulted in the January 29, 1998 decision affirming Mr. Yoder's decision that the complaint should be filed at LCI.
It is the next series of filings that form the basis for appellant's complaint for a writ of mandamus. Essentially, appellant was told in the January 29, 1998 decision to begin the process anew by filing a grievance with the inspector of institutional services at LCI. Appellant contends that he did this by filing a notification of grievance with LCI on February 12, 1998. Construing the evidence most strongly in favor of appellant, LCI failed to respond to the grievance within the time allowed in Ohio Adm. Code 5120-9-31(H)(5) (fifteen days) and, therefore, appellant filed his grievance directly with the chief inspector on March 14, 1998. It must be emphasized that this is in the context of summary judgment. Hence, while appellant's and appellee's evidence contradict each other as to whether the chief inspector received a grievance along with the letter, we must accept appellant's evidence at this time.
Ohio Adm. Code 5120-9-31(H)(5) permits an inmate to file a grievance directly with the chief inspector if the grievance submitted locally is not resolved within fifteen working days. Construing the evidence most strongly in favor of appellant, appellant filed a grievance directly with the chief inspector, and the chief inspector had a duty to proceed on such grievance.
Given the above, appellant raised a genuine issue as to whether he is entitled to a writ of mandamus compelling the chief inspector to proceed on his grievance. Accordingly, summary judgment against appellant on the merits of his mandamus claim was inappropriate.
Having found no basis upon which to support summary judgment in favor of appellee, appellant's first assignment of error is sustained.
In summary, appellant's assignments of error are sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to the trial court with instructions to grant appellant leave to amend his complaint in order to comply with R.C. 2731.04, to allow appellant to file any required affidavits pursuant to R.C. 2969.25, and to conduct further appropriate proceedings.
Judgment reversed and cause remanded with instructions.
PETREE and BROWN, JJ., concur.